**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

AUGME TECHNOLOGIES, INC.,

        Plaintiff,

        v.

MILLENNIAL MEDIA, INC.,

        Defendant.

Civil Action No. 12-424-LPS

**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

1.   Plaintiff Augme Technologies, Inc. ("Augme" or "Plaintiff"), by and through its attorneys, hereby demands a jury trial and complains of Defendant Millennial Media, Inc. ("Millennial" or "Defendant") as follows:

## NATURE OF THE ACTION

2.   This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to enjoin infringement and obtain damages resulting from Defendant's unauthorized manufacture, use, offer for sale, sale and/or importation into the United States for subsequent use or sale of products, methods, processes, services and/or systems that infringe one or more claims of United States Patent No. 7,783,721 (the "'721 Patent") (attached as Exhibit A) entitled "Method and Code Module For Adding Function To A Web Page," United States Patent No. 7,269,636 (the "'636 Patent") (attached as Exhibit B) entitled "Method and Code Module For Adding Function To A Web Page," and United States Patent No. 6,594,691 (the "'691 Patent") (attached as Exhibit C) entitled "Method and System For Adding Function To A Web Page." Plaintiff seeks injunctive relief to prevent Defendant from continuing to infringe Plaintiff's patents. In addition, Plaintiff seeks a recovery of monetary

damages resulting from Defendant's past infringement of these patents.

3.    This action for patent infringement involves Defendant's manufacture, use, offer for sale, sale and/or importation into the United States of infringing products, methods, processes, services and/or systems that are primarily used or primarily adapted for use in an electronic or computer network system for targeting content via a Web browser.

**THE PARTIES**

4.    Plaintiff Augme is a corporation organized under the laws of the State of Delaware, with its principal place of business at 350 7th Ave., 2d Floor, New York, New York 10001.

5.    Plaintiff Augme is the lawful assignee of all right, title and interest in and to the '721, '636, and '691 Patents (collectively, the "patents-in-suit").

6.    Augme was founded in 1999 and provides mobile marketing technology and related services to leading consumer and healthcare brand businesses.  Its AD LIFE® mobile marketing platform has been used for many industry-leading ad campaigns.  Using Augme's patented technology, its AD LIFE® platform solves the mobile marketing industry's problem of disparate operating systems, device types, and on-screen content rendering.  Augme's AD LIFE® and AD SERVE® ad delivery engine are true end-to-end mobile marketing and mobile advertising solutions, enabling customers to quickly create, deploy and measure rich-media, interactive marketing campaigns across multiple networks and devices through a single access point.  Augme's technology enables its clients to provide advertising campaigns targeted to users and their devices.  Augme provides constructive notice to the world of its patent rights by marking its patented AD LIFE® products with the numbers of its patents in compliance with 35 U.S.C. § 287.

7.    Upon information and belief, Defendant Millennial is a corporation organized under

#16196286 v1

the laws of the State of Delaware with a principal place of business located at 2400 Boston

Street, Suite 201, Baltimore, MD 21224.

8.      Upon information and belief, Millennial makes, uses, offers to sell, sells and/or

imports into the United States certain mobile advertising platforms, applications, services,

systems, and/or methods that enable businesses to provide targeted advertisements to Web pages

that are personalized based upon characteristics of a user and his/her computing environment.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this patent infringement action

pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.     Defendant is subject to personal jurisdiction in the State of Delaware because it is a

citizen of the State of Delaware and it regularly transacts business in this judicial district and

division by, among other things, offering its products and services to customers, business

affiliates and partners located in this judicial district and division.  In addition, Defendant has

committed acts of direct infringement, contributory infringement, and/or inducement of

infringement of one or more of the claims of one or more of the patents-in-suit in this judicial

district and division.

11.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and

1400(b) because Defendant is subject to personal jurisdiction in this district and has committed

acts of infringement in this district.

## FACTUAL BACKGROUND

12.     The patents-in-suit are all generally directed to systems and methods for providing

targeted content over the Internet.  The '721, the '636, and the '691 Patents are generally

directed to the manner in which content provided in a Web page, such as advertisements, music,

-3-

videos, and the like, is customized based on the end user's computing environment, connectivity, bandwidth level, geographic location, gender, age, or other targeting criteria such as behavioral marketing data.  By way of example, a Web page about Texas cooking may air commercials relevant to that topic, such as food items, antacids, and barbecues.

13.    The '721 Patent was duly and legally issued on August 24, 2010.

14.    The '636 Patent was duly and legally issued on September 11, 2007.

15.    The '691 Patent was duly and legally issued on July 15, 2003.

16.    Plaintiff Augme is the assignee of all right, title and interest in and to the aforementioned patents and has the legal right to enforce the patents-in-suit against the Defendant in this case.

### Defendant's Products, Services, Systems, and Processes Infringe Augme's Patents

17.    Defendant makes, uses, offers to sell, sells and/or imports products and services that infringe the patents-in-suit.  Defendant directly infringes, contributorily infringes and/or induces others to infringe one or more claims of the patents-in-suit.  By way of example, and without limitation, Millennial makes, uses, offers to sell, sells and/or imports its mobile advertising platform, including Millennial Media's MYDAS technology engine.  Millennial offers to sell, sells and/or imports its mobile advertising platform, including Millennial Media's MYDAS technology engine and related products or services to third parties, including developers, marketers, and advertisers, in order that such third parties can make, use, offer to sell, or sell applications, websites and advertisements that utilize the patented inventions.  Based upon publicly available information found at http://www.millennialmedia.com, Defendant, and the third parties to whom Defendant has sold the MYDAS platform products and services, infringe one or more claims of each of the patents-in-suit.

#16196286 v1

18.    By way of example, and without limitation, the accused mobile advertising platform and MYDAS technology engine provide content targeting technologies to create advertisements for mobile Web pages that are customized based on the end user's mobile computing environment, geographic location, and other targeting criteria.  When a Web page is downloaded onto a mobile device, a Web browser retrieves information about the user's location, device type, and carrier.  The information retrieved about the user's location, device type, and carrier is used to customize the advertisements displayed on the Web page.

19.    Based upon publicly available information, the accused mobile advertising platform and MYDAS technology engine satisfy every element of one or more of the claims of each of the patents-in-suit.  Augme reserves the right to supplement or amend the list of accused products/services after reviewing non-publicly available information obtained through discovery.

### Augme Has Been Irreparably Harmed by Defendant's Continued Infringement

20.    Plaintiff Augme has been irreparably harmed by Defendant's infringement of its valuable patent rights.  Moreover, Defendant's unauthorized, infringing use of Plaintiff's patented systems and methods has threatened the value of this intellectual property because Defendant's conduct results in Plaintiff's loss of its lawful patent rights to exclude others from making, using, offering to sell, selling and/or importing the patented inventions.

21.    Defendant's disregard for Plaintiff's property rights similarly threatens Plaintiff's relationships with potential licensees of this intellectual property.  Defendant will derive a competitive advantage over any of Plaintiff's future licensees from using Plaintiff's patented technology without paying compensation for such use.  Accordingly, unless and until Defendant's continued acts of infringement are enjoined, Plaintiff will suffer further irreparable harm for which there is no adequate remedy at law.

#16196286 v1

## COUNT I

### Infringement of United States Patent No. 7,783,721

22.    Paragraphs 1 through 21 are incorporated by reference as if fully restated herein.

23.    Plaintiff Augme is the assignee and lawful owner of all right, title and interest in and to the '721 Patent.

24.    Defendant makes, uses, offers to sell, sells and/or imports into the United States for subsequent sale or use products, services, methods or processes that infringe, directly and/or indirectly, or which employ systems, components and/or steps that make use of systems or processes that infringe, directly and/or indirectly, one or more of the claims of the '721 Patent.

25.    Plaintiff Augme provides notice of its '721 Patent by marking its mobile marketing technology and related services, such as the AD LIFE® mobile marketing platform, with the '721 Patent number in compliance with 35 U.S.C. § 287.

26.    Plaintiff Augme and Defendant Millennial are direct competitors in the mobile marketing industry.  Augme competes with Millennial for the same clients and contracts to provide targeted mobile marketing and advertising solutions across media channels and mobile devices.  For example, Augme and Millennial have competed to provide at least United Parcel Service ("UPS"), Starbucks, Reebok Cross Fit, and Nikon with mobile marketing and advertising solutions.

27.    Augme competes with Millennial at trade shows such as Mobile Marketing Forum, Direct Marketing Association Mobile Day, Ad:tech events, MediaPost's OMMA events, Digiday events, iMedia events, Mobile Marketer events, and Cellular Telecommunications and Internet Association events, at which Augme and Millennial have been attendees, speakers, and presenters.  At these events, Augme and Millennial have held meetings with prospective and

#16196286 v1

current customers.

28.    As a direct competitor in the mobile marketing industry, Defendant Millennial was willfully blind to or had actual knowledge of the AD LIFE® mobile marketing platform and the '721 Patent that marks Augme's technology, through Millennial's attendance and presentations at tradeshows and competition for the same prospective customers, and as a result of Augme's marking of its products and services.

29.    As a result of the aforesaid competition between the parties and Augme's marking of its competing products and services, Defendant Millennial acquired actual knowledge of or was willfully blind to the fact that the making, using, offering to sell, selling and/or importing into the United States for subsequent sale or use of its mobile advertising platform and MYDAS technology engine constitutes infringement and/or induces or contributes to the infringement of the '721 Patent.

30.    Defendant Millennial knows that both its mobile advertising platform and MYDAS technology engine are, at a minimum, material parts of Plaintiff's invention, that the advertising platform and MYDAS technology engine have no substantial non-infringing uses, and that the combination for which the mobile advertising platform and MYDAS technology engine were especially designed infringes the '721 Patent.

31.    Plaintiff Augme served Defendant Millennial with Plaintiff's Complaint on April 9, 2012.  Plaintiff's Complaint identified the patents-in-suit, the accused products, the infringement allegations, and the damages sought.  Defendant Millennial indisputably possessed actual knowledge of the '721 Patent no later than the date it was served with Plaintiff's Complaint.

32.    No later than the date it was served with Plaintiff's Complaint, Millennial was aware that the making, using, offering to sell, selling and/or importing into the United States for

#16196286 v1

subsequent sale or use of the advertising platform and MYDAS technology engine constitutes infringement of the '721 Patent, and/or induces or contributes to the infringement of the '721 Patent.

33.   No later than the date it was served with Plaintiff's Complaint, Millennial knew that the advertising platform and MYDAS technology engine are, at a minimum, material parts of Plaintiff's invention, that the advertising platform and MYDAS technology engine have no substantial non-infringing uses, and the combination for which the advertising platform and MYDAS technology engine are especially designed is both patented by the '721 Patent and infringing.

34.   Defendant Millennial induces infringement by purposefully and knowingly causing, urging, encouraging, aiding, or abetting third parties, such as its customers, developers, marketers, and advertisers, to infringe the '721 Patent, and Millennial continues to do so.  Such acts include, but are not limited to, providing the third parties with the infringing technology, advertising the infringing technology, instructing third parties to use the technology in an infringing manner, and providing support services to enable the third parties to use the technology in an infringing manner.  Millennial derives substantial revenues from such activities. Millennial purposefully and knowingly caused, urged, encouraged, aided, abetted or instructed third parties, such as its customers, developers, marketers, and advertisers, to make, use, offer to sell, or sell applications, websites and advertisements with the advertising platform and MYDAS technology engine in a way that infringes at least one claim of the '721 Patent, and Millennial continues to do so.  Millennial has had actual knowledge of the '721 Patent during the time it has taken these actions.  Millennial knew or should have known that its acts of inducement result in infringement of at least one claim of the '721 Patent.  Third parties, such as Millennial

customers, developers, marketers, and advertisers directly infringe the '721 Patent by making, using, offering to sell, or selling applications, websites and advertisements with the advertising platform and MYDAS technology engine. Millennial has not ceased its acts of inducement since the filing of Plaintiff's Complaint.

35. Defendant Millennial supplies the advertising platform and MYDAS technology engine, which constitute, at a minimum, parts or components that are material parts of the invention of the '721 Patent. The advertising platform and MYDAS technology engine are especially made or adapted for use in a way that infringes at least one claim of the '721 Patent, and Millennial knows that the advertising platform and MYDAS technology engine are especially made for that use. The advertising platform and MYDAS technology engine are not staples or commodity articles, and have no substantial noninfringing uses. Millennial has not ceased supplying the advertising platform and MYDAS technology engine since the filing of Plaintiff's Complaint.

36. Defendant has been and will continue infringing one or more of the claims of the '721 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, offering to sell, selling and importing the patented inventions.

37. Defendant has been inducing and/or contributing to the infringement of the '721 Patent through the aforesaid acts, and will continue to induce and/or contribute to the infringement of the '721 Patent, in violation of 35 U.S.C. §§ 271(b) and (c), unless enjoined by this Court.

38. Plaintiff is entitled to recover damages adequate to compensate for the infringement

#16196286 v1

pursuant to 35 U.S.C. § 284 and is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

## COUNT II

### Infringement of United States Patent No. 7,269,636

39.    Paragraphs 1 through 38 are incorporated by reference as if fully restated herein.

40.    Plaintiff Augme is the assignee and lawful owner of all right, title and interest in and to the '636 Patent.

41.    Defendant makes, uses, offers to sell, sells and/or imports into the United States for subsequent sale or use products, services, methods or processes that infringe, directly and/or indirectly, or which employ systems, components and/or steps that make use of systems or processes that infringe, directly and/or indirectly, one or more of the claims of the '636 Patent.

42.    Plaintiff Augme provides notice of its '636 Patent by marking its mobile marketing technology and related services, such as the AD LIFE® mobile marketing platform, with the '636 Patent number in compliance with 35 U.S.C. § 287.

43.    Plaintiff Augme and Defendant Millennial are direct competitors in the mobile marketing industry.  Augme competes with Millennial for the same clients and contracts to provide targeted mobile marketing and advertising solutions across media channels and mobile devices.  For example, Augme and Millennial have competed to provide at least UPS, Starbucks, Reebok Cross Fit, and Nikon with mobile marketing and advertising solutions.

44.    Augme competes with Millennial at trade shows such as Mobile Marketing Forum, Direct Marketing Association Mobile Day, Ad:tech events, MediaPost's OMMA events, Digiday events, iMedia events, Mobile Marketer events, and Cellular Telecommunications and Internet Association events, at which Augme and Millennial have been attendees, speakers, and presenters.  At these events, Augme and Millennial have held meetings with prospective and

#16196286 v1

current customers.

45.    As a direct competitor in the mobile marketing industry, Defendant Millennial was willfully blind to or had actual knowledge of the AD LIFE® mobile marketing platform and the '636 Patent that marks Augme's technology, through Millennial's attendance and presentations at tradeshows and competition for the same prospective customers, and as a result of Augme's marking of its products and services.

46.    As a result of the aforesaid competition between the parties and Augme's marking of its competing products and services, Defendant Millennial acquired actual knowledge of or was willfully blind to the fact that the making, using, offering to sell, selling and/or importing into the United States for subsequent sale or use of the advertising platform and MYDAS technology engine constitutes infringement and/or induces or contributes to the infringement of the '636 Patent.

47.    Defendant Millennial knows that both the advertising platform and MYDAS technology engine are, at a minimum, material parts of Plaintiff's invention, that the advertising platform and MYDAS technology engine have no substantial non-infringing uses, and that the combination for which the mobile advertising platform and MYDAS technology engine were especially designed infringes the '636 Patent.

48.    Plaintiff Augme served Defendant Millennial with Plaintiff's Complaint on April 9, 2012.  Plaintiff's Complaint identified the patents-in-suit, the accused products, the infringement allegations, and the damages sought.  Defendant Millennial indisputably possessed actual knowledge of the '636 Patent no later than the date it was served with Plaintiff's Complaint.

49.    No later than the date it was served with Plaintiff's Complaint, Millennial was aware that the making, using, offering to sell, selling and/or importing into the United States for

subsequent sale or use of the advertising platform and MYDAS technology engine constitutes

infringement of the '636 Patent, and/or induces or contributes to the infringement of the '636

Patent.

50.     No later than the date it was served with Plaintiff's Complaint, Millennial knew that

the advertising platform and MYDAS technology engine are, at a minimum, material parts of

Plaintiff's invention, that the advertising platform and MYDAS technology engine have no

substantial non-infringing uses, and the combination for which the advertising platform and

MYDAS technology engine are especially designed is both patented by the '636 Patent and

infringing.

51.     Defendant Millennial induces infringement by purposefully and knowingly causing,

urging, encouraging, aiding, or abetting third parties, such as its customers, developers,

marketers, and advertisers, to infringe the '636 Patent, and Millennial continues to do so.  Such

acts include, but are not limited to, providing the third parties with the infringing technology,

advertising the infringing technology, instructing third parties to use the technology in an

infringing manner, and providing support services to enable the third parties to use the

technology in an infringing manner.  Millennial derives substantial revenues from such activities.

Millennial purposefully and knowingly caused, urged, encouraged, aided, abetted or instructed

third parties, such as its customers, developers, marketers, and advertisers, to make, use, offer to

sell, or sell applications, websites and advertisements with the advertising platform and MYDAS

technology engine in a way that infringes at least one claim of the '636 Patent, and Millennial

continues to do so.  Millennial has had actual knowledge of the '636 Patent during the time it has

taken these actions.  Millennial knew or should have known that its acts of inducement result in

infringement of at least one claim of the '636 Patent.  Third parties, such as Millennial

-12-

customers, developers, marketers, and advertisers directly infringe the '636 Patent by making, using, offering to sell, or selling applications, websites and advertisements with the advertising platform and MYDAS technology engine. Millennial has not ceased its acts of inducement since the filing of Plaintiff's Complaint.

52. Defendant Millennial supplies the advertising platform and MYDAS technology engine, which constitute, at a minimum, parts or components that are material parts of the invention of the '636 Patent. The advertising platform and MYDAS technology engine are especially made or adapted for use in a way that infringes at least one claim of the '636 Patent, and Millennial knows that the advertising platform and MYDAS technology engine are especially made for that use. The advertising platform and MYDAS technology engine are not staples or commodity articles, and have no substantial noninfringing uses. Millennial has not ceased supplying the advertising platform and MYDAS technology engine since the filing of Plaintiff's Complaint.

53. Defendant has been and will continue infringing one or more of the claims of the '636 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, offering to sell, selling and importing the patented inventions.

54. Defendant has been inducing and/or contributing to the infringement of the '636 Patent through the aforesaid acts, and will continue to induce and/or contribute to the infringement of the '636 Patent, in violation of 35 U.S.C. §§ 271(b) and (c), unless enjoined by this Court.

55. Plaintiff is entitled to recover damages adequate to compensate for the infringement

#16196286 v1

pursuant to 35 U.S.C. § 284 and is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

## COUNT III

### Infringement of United States Patent No. 6,594,691

56. Paragraphs 1 through 55 are incorporated by reference as if fully restated herein.

57. Plaintiff Augme is the assignee and lawful owner of all right, title and interest in and to the '691 Patent.

58. Defendant makes, uses, offers to sell, sells and/or imports into the United States for subsequent sale or use products, services, methods or processes that infringe, directly and/or indirectly, or which employ systems, components and/or steps that make use of systems or processes that infringe, directly and/or indirectly, one or more of the claims of the '691 Patent.

59. Plaintiff Augme provides notice of its '691 Patent by marking its mobile marketing technology and related services, such as the AD LIFE® mobile marketing platform, with the '691 Patent number in compliance with 35 U.S.C. § 287.

60. Plaintiff Augme and Defendant Millennial are direct competitors in the mobile marketing industry. Augme competes with Millennial for the same clients and contracts to provide targeted mobile marketing and advertising solutions across media channels and mobile devices. For example, Augme and Millennial have competed to provide at least UPS, Starbucks, Reebok Cross Fit, and Nikon with mobile marketing and advertising solutions.

61. Augme competes with Millennial at trade shows such as Mobile Marketing Forum, Direct Marketing Association Mobile Day, Ad:tech events, MediaPost's OMMA events, Digiday events, iMedia events, Mobile Marketer events, and Cellular Telecommunications and Internet Association events, at which Augme and Millennial have been attendees, speakers, and presenters. At these events, Augme and Millennial have held meetings with prospective and

#16196286 v1

current customers.

62.   As a direct competitor in the mobile marketing industry, Defendant Millennial was willfully blind to or had actual knowledge of the AD LIFE® mobile marketing platform and the '691 Patent that marks Augme's technology, through Millennial's attendance and presentations at tradeshows and competition for the same prospective customers, and as a result of Augme's marking of its products and services.

63.   As a result of the aforesaid competition between the parties and Augme's marking of its competing products and services, Defendant Millennial acquired actual knowledge of or was willfully blind to the fact that the making, using, offering to sell, selling and/or importing into the United States for subsequent sale or use of the advertising platform and MYDAS technology engine constitutes infringement and/or induces or contributes to the infringement of the '691 Patent.

64.   Defendant Millennial knows that both its mobile advertising platform and MYDAS technology engine are, at a minimum, material parts of Plaintiff's invention, that the advertising platform and MYDAS technology engines have no substantial non-infringing uses, and that the combination for which the mobile advertising platform and MYDAS technology engine were especially designed infringes the '691 Patent.

65.   Plaintiff Augme served Defendant Millennial with Plaintiff's Complaint on April 9, 2012.  Plaintiff's Complaint identified the patents-in-suit, the accused products, the infringement allegations, and the damages sought.  Defendant Millennial indisputably possessed actual knowledge of the '691 Patent no later than the date it was served with Plaintiff's Complaint.

66.   No later than the date it was served with Plaintiff's Complaint, Millennial was aware that the making, using, offering to sell, selling and/or importing into the United States for

-15-

subsequent sale or use of the advertising platform and MYDAS technology engine constitutes infringement of the '691 Patent, and/or induces or contributes to the infringement of the '691 Patent.

67.    No later than the date it was served with Plaintiff's Complaint, Millennial knew that the advertising platform and MYDAS technology engine are, at a minimum, material parts of Plaintiff's invention, that the advertising platform and MYDAS technology engine have no substantial non-infringing uses, and the combination for which the advertising platform and MYDAS technology engine are especially designed is both patented by the '691 Patent and infringing.

68.    Defendant Millennial induces infringement by purposefully and knowingly causing, urging, encouraging, aiding, or abetting third parties, such as its customers, developers, marketers, and advertisers, to infringe the '691 Patent, and Millennial continues to do so.  Such acts include, but are not limited to, providing the third parties with the infringing technology, advertising the infringing technology, instructing third parties to use the technology in an infringing manner, and providing support services to enable the third parties to use the technology in an infringing manner.  Millennial derives substantial revenues from such activities. Millennial purposefully and knowingly caused, urged, encouraged, aided, abetted or instructed third parties, such as its customers, developers, marketers, and advertisers, to make, use, offer to sell, or sell applications, websites and advertisements with the advertising platform and MYDAS technology engine in a way that infringes at least one claim of the '691 Patent, and Millennial continues to do so.  Millennial has had actual knowledge of the '691 Patent during the time it has taken these actions.  Millennial knew or should have known that its acts of inducement result in infringement of at least one claim of the '691 Patent.  Third parties, such as Millennial

-16-

customers, developers, marketers, and advertisers directly infringe the '691 Patent by making, using, offering to sell, or selling applications, websites and advertisements with the advertising platform and MYDAS technology engine.  Millennial has not ceased its acts of inducement since the filing of Plaintiff's Complaint.

69.    Defendant Millennial supplies the advertising platform and MYDAS technology engine, which constitute, at a minimum, parts or components that are material parts of the invention of the '691 Patent.  The advertising platform and MYDAS technology engine are especially made or adapted for use in a way that infringes at least one claim of the '691 Patent, and Millennial knows that the advertising platform and MYDAS technology engine are especially made for that use.  The advertising platform and MYDAS technology engine are not staples or commodity articles, and have no substantial noninfringing uses.  Millennial has not ceased supplying the advertising platform and MYDAS technology engine since the filing of Plaintiff's Complaint.

70.    Defendant has been and will continue infringing one or more of the claims of the '691 Patent through the aforesaid acts, and will continue to do so unless enjoined by this Court. Defendant's wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, offering to sell, selling and importing the patented inventions.

71.    Defendant has been inducing and/or contributing to the infringement of the '691 Patent through the aforesaid acts, and will continue to induce and/or contribute to the infringement of the '691 Patent, in violation of 35 U.S.C. §§ 271(b) and (c), unless enjoined by this Court.

72.    Plaintiff is entitled to recover damages adequate to compensate for the infringement

#16196286 v1

pursuant to 35 U.S.C. § 284 and is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant, granting Plaintiff the following relief:

A.      That this Court adjudge and decree that the '721 Patent is valid and enforceable against Defendant, that the '636 Patent is valid and enforceable against Defendant and that the '691 Patent is valid and enforceable against Defendant;

B.      That this Court adjudge and decree that Defendant has infringed, directly and indirectly, the '721 Patent, the '636 Patent and the '691 Patent;

C.      That this Court permanently enjoin Defendant, and its parents, subsidiaries, affiliates, successors and assigns, and each of its officers, directors, employees, representatives, agents, and attorneys, and all persons acting in concert or active participation with, or on its behalf, or within its control, from making, using, offering to sell, selling, importing, or advertising products and/or services and/or employing systems, hardware, software and/or components and/or making use of systems or processes that infringe any of the claims of the patents-in-suit, or otherwise engaging in acts of infringement of the patents-in-suit, all as alleged herein;

D.      That this Court order an accounting, including a post-verdict accounting, to determine the damages to be awarded to Plaintiff as a result of Defendant's infringement;

E.      That this Court, pursuant to 35 U.S.C. § 284, enter an award to Plaintiff of such damages as it shall prove at trial against Defendant that are adequate to compensate Plaintiff for said infringement, said damages to be no less than a reasonable royalty together with interest and costs;

F.      That this Court assess pre-judgment and post-judgment interest and costs against

Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. §

284;

G.      That this Court declare this case to be exceptional and direct Defendant to pay

Augme's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. § 285;

and

H.      Grant to Plaintiff such other, further, and different relief as may be just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all matters to which it is entitled to trial by jury

pursuant to Fed. R. Civ. P. 38.


                                                    Respectfully submitted,

                                                    /s/ *Edmond D. Johnson*
Goutam Patnaik                                      Edmond D. Johnson (Del. Bar No. 2257)
Tuhin Ganguly                                       James G. McMillan, III (Del. Bar No. 3979)
Pepper Hamilton LLP                                 Pepper Hamilton LLP
Hamilton Square                                     Hercules Plaza, Suite 5100
600 Fourteenth Street, N.W.                         1313 Market Street
Washington, DC 20005-2004                           P.O. Box 1709
Tel: 202.220.1200                                   Wilmington, DE 19899-1709
Fax: 202.220.1665                                   Tel.:  302.777.6500
Email: patnaikg@pepperlaw.com                       Fax.:  302.421.8390
Email: gangulyt@pepperlaw.com                       Email:  johnsone@pepperlaw.com
                                                    Email:  mcMillaj@pepperlaw.com

                                                    Attorneys for Plaintiff
                                                    Augme Technologies, Inc.

Dated: June 18, 2012

#16196286 v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of June, 2012, a copy of the foregoing **AUGME**

**TECHNOLOGIES, INC.'S FIRST AMENDED COMPLAINT FOR PATENT**

**INFRINGEMENT** was served electronically with the Clerk of the Court via CM/ECF, which

will send automatic notification of the filing to the following:

> Steven J. Balick, Esq.
> **ASHBY & GEDDES**
> 500 Delaware Avenue, 8th Floor
> P.O. Box 1150
> Wilmington, DE 19899
>
> *Attorneys for Defendant Millennial USA, Inc.*


*/s/ Edmond D. Johnson*
Edmond D. Johnson (Del. Bar No. 2257)
